UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ERIC RAY JONES, )<br>)<br>Defendant. )<br>) | Crim. No. 05-373 (PLF) |

**MOTION TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS
AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF**

Defendant Eric Jones, through counsel, respectfully moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, and the Fourth and Fifth Amendments to the United States Constitution, to suppress all tangible evidence and statements obtained in this case. Mr. Jones respectfully requests a hearing on this matter.

**Factual Background**

On October 6, 2005, Mr. Jones was indicted with possession a firearm and ammunition by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. 922(g)(1); possession of ammunition by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. 922(g)(1); possession with intent to distribute cannabis in violation of 21 U.S.C. 841(a)(1) and (b)(1)(D); using, carrying, and possessing a firearm during a drug trafficking offense in violation of 18 U.S.C. 924(c)(1); and threatening to injure or physically damage in violation of 22 D.C. Code 407. These charges stem from the warrantless arrest of Mr. Jones and the warrantless search and seizure of a vehicle rented in his name.

On May 13, 2005, officers of the District of Columbia Metropolitan Police Department (MPD), responded to a radio dispatch from an unknown source for a man with a gun in a van in the 2200 block of Bryant Place, SE. After officers arrived at that location, they approached a van that had a person sitting in the front passenger seat at 2220 Bryant Place, SE. Officers directed the passenger to open the door and he complied. The officers began to question the passenger when they claim they detected the odor of marijuana. Officers removed the passenger from the vehicle and searched it.

Officers first opened a compartment under the front passenger seat and discovered a nine millimeter firearm.

Officers continued to search the vehicle. They opened a closed backpack located behind the driver's seat and discovered a plastic bag, which contained two ziplock bags containing a total of approximately 300 grams of marijuana. Also inside the backpack was a second 9 millimeter firearm, two empty cartridges, and third cartridge with 8 rounds of .45 caliber ammunition.

Officers continued to search the vehicle. In the rear of the vehicle, they discovered a closed suitcase. They opened it to discover 25 rounds of AK-47 ammunition, tennis shoes, medical dressing, and gauze.

Somewhere in the vehicle, police officers seized an identification in Mr. Jones' name, as well as rental papers for the minivan in Mr. Jones' name. These documents led the police to question the passenger further, who indicated that the driver was named "E" and he was "down the street." The passenger indicated that "E" was his brother.

Officers entered the apartment building at 2220 Bryant Place, SE. Officers entered apartment #101 where they located Mr. Jones. Mr. Jones was placed under arrest and transported

to Seventh District. During his transport, he allegedly made spontaneous statements without being Mirandized, including: "I know whose guns they are; JJ pulled the trigger and shot me in my back.; and, A forty-five is what I used to shoot back at those dudes right out front of where I live at." When he reached the police station, Mr. Jones was interrogated despite his apparent inability to knowingly, intelligently, and voluntarily waive his right to remain silent or his right to have counsel present because of his mental state.

Officers had no warrant and no probable cause to search the vehicle or any container found within the vehicle. Officers likewise had no probable cause to arrest and interrogate Mr. Jones. Because there was no lawful authority to search the vehicle and to subsequently arrest Mr. Jones, the evidence seized and the statements obtained from Mr. Jones were the fruit of improper police conduct and should be suppressed.

Moreover, the statements in this case were obtained in violation of Mr. Jones' constitutional rights. Mr. Jones did not make an intelligent, knowing, and voluntary waiver of his rights under the Fifth and Sixth Amendments at the time he was interrogated by police. Additionally, Mr. Jones' statements were not voluntary.

## MEMORANDUM OF LAW

I. **ALL TANGIBLE EVIDENCE AND STATEMENTS MUST BE SUPPRESSED BECAUSE THEY WERE OBTAINED IN VIOLATION OF MR. JONES' FOURTH AMENDMENT RIGHTS AFTER AN UNLAWFUL SEARCH AND SEIZURE BY THE POLICE**

The Fourth Amendment of the United States Constitution guarantees the right of people to be secure in their persons and protects them against unreasonable searches and seizures by the police. U.S. CONST. Amend IV. The government bears the burden of adducing sworn testimony sufficient to satisfy this Court that the facts and circumstances known to the officers both at the

time they stopped the vehicle, ordered the passenger out and, subsequently, at the time they stopped and seized Mr. Jones, justified each of those intrusions. United States v. Jenkins, 530 F. Supp. 8, 10 (D.D.C. 1981) (citing Brinegar v. United States, 338 U.S. 160, 175 (1949).

In this case, evidence adduced at an evidentiary hearing will establish that there was no probable cause to search the vehicle rented in Mr. Jones' name, that Mr. Jones' stop and seizure were unlawful, and that any derivative evidence discovered therefrom must be suppressed. See Taylor v. Alabama, 457 U.S. 687 (1982); Wong Sun v. United States, 371 U.S. 471 (1963).

Officers are not authorized to conduct an "on-the-street warrantless search of a person's effects based upon a police officer's suspicion or hunch." United States v. Boswell, 347 A.2d 270, 276 (D.C. 1975). Rather, when a person is seized or a person or place is searched without a warrant, the government bears the burden of proving the propriety of such action if any evidence from the seizure is to be used at trial. See Malcolm v. United States, 332 A.2d 917, 918 (D.C. 1975). Unless the government can show that the tangible evidence and statements were obtained pursuant to a valid exception to the Fourth Amendment's warrant requirement, all such information must be excluded at trial. See Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971). The government will not be able to meet this heavy burden because, in this case, no valid exception applies.

In this case, the police acted without the authority of a warrant. The officers' basis for stopping the vehicle and the passenger in that vehicle was an unknown source. The Supreme Court has ruled that a seizure based on such facts is insufficient to establish probable cause or even reasonable suspicion. See Florida v. J.L., 529 U.S. 266 (2000) (holding an anonymous tip that a person is carrying a gun is, without more, sufficient to justify a police officer's stop and frisk of that person). Moroever, the allegation by officers that they could smell marijuana did not

subsequently give rise to probable cause to search the vehicle following the removal of the passenger.

In United States v. Williams the D.C. Circuit discussed the "plain smell" position. 822 F.2d 1174, 1183n.105 (D.C. Cir. 1987). In that case, the Circuit noted the division among other Circuits as to whether a smell can provide a basis to search under the Fourth Amendment. Id. ("[t]his 'plain smell' doctrine has been rejected by some courts, however, See e.g., United States v. Johns, 707 F.2d 1093, 1096 (9th Cir. 1983) ('while the odor of marijuana smelled by [law enforcement] agents would contribute to probable cause' it did not constitute 'a recognized exception to the warrant requirement [sufficient[ to justify a warrantless search')").

The D.C. Circuit recognized the logic underlying the decisions of those Circuits rejecting an exception to the warrant requirement based upon plain smell: "Courts refusing to recognize the 'plain smell' exception have noted that the 'fleeting and evanescent' nature of odors renders it impossible for a court considering a motion to suppress to evaluate them." Id. Notably, even among those Circuits who have adopted the "plain smell" approach, it is far from clear that an odor of marijuana–without viewing smoke, ashes, or butts–would be enough for the warrantless search of a vehicle. Similarly, the officers' claim, if believed, that they could smell the marijuana subsequently found inside two plastic bags and a backpack does not provide probable cause for the search conducted in this case.

Furthermore, the search of containers in the vehicle does not meet the plain view exception to the warrant requirement. Police are not permitted to wantonly search closed containers in a vehicle because of the owner's reasonable expectation of privacy in those containers. The Fourth Amendment requires that all searches be "reasonable." In order for the warrantless search of an unoccupied vehicle to be "reasonable," an officer must have probable

cause to believe that the searched portion of the automobile contains contraband or evidence of a crime. See United States v. Ross, 456 U.S. 798, 809 (1982). Probable cause exists when the "totality of the circumstances" suggests "a fair probability that contraband or evidence of a crime [would] be found." Illinois v. Gates, 462 U.S. 213, 238 (1983). The government, not the defendant, bears the burden of demonstrating the constitutionality of the search. See Hayes, 470 U.S. 811; Royer, 460 U.S. at 500; Matlock, 415 U.S. at 177 n.14; Allen, 629 F.2d at 55; see also Katz, 389 U.S. 347; Henry, 361 U.S. 98 (1959).

The police likewise lacked probable cause to arrest Mr. Jones. See Dunaway v. New York, 442 U.S. 200, 213 (1979). In this case, there was no probable cause to detain and arrest Mr. Jones as he was inside a building along the same street as the vehicle in question. Police had been led to that location by a suspect who had been in proximity to all of the evidence at the time the police discovered it. This person had a clear bias in providing information to the government, and a clear motive to lie and to shift blame away from himself. He was not reliable and the police should not have arrested Mr. Jones based upon the statements of this person.

Because the search of the van was improper, the evidence obtained as a result thereof was obtained by unlawful means. When evidence is obtained because of a warrantless and unlawful seizure and/or an unlawful search, it is considered the "fruit of a poisonous tree" and must be excluded at trial. See Wong Sun v. United States, 371 U.S. 471, 488 (1963).
.

**II.     ALL STATEMENTS MUST BE SUPPRESSED BECAUSE THEY WERE OBTAINED IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

Police may not question a person who is in their custody without first warning him that he has a right to remain silent, that anything he says may be used against him, that he is entitled to

consult with an attorney and to have the attorney present during the interrogation, and that if he cannot afford to hire an attorney, one will be appointed for him. Miranda v. Arizona, 384 U.S. 436, 444 (1966). In creating this list of warnings, the Supreme Court was not just making suggestions to police officers, but instead was creating "concrete constitutional guidelines for law enforcement agencies and courts to follow." Id. at 441-42; see also Dickerson v. United States, 120 S.Ct. 2326 (2000) (holding that principles of Miranda are constitutionally mandated). "[A]ny questioning initiated by law enforcement officers after a person has been taken into custody or otherwise of his freedom of action in some significant way" must be preceded by Miranda warnings. Miranda, supra, 384 U.S. at 444. Moreover, any police action is deemed interrogation for Miranda purposes so long as it is reasonably likely to elicit an incriminating response from the person in custody. See Rhode Island v. Innis, 446 U.S. 291 (1980). Here, the evidence will show that police engaged in conduct likely to illicit an incriminating response from Mr. Jones.

      Even if the government is able to show that the defendant was read his Miranda rights prior to interrogation, the government still has the heavy burden of showing that the defendant intelligently, knowingly and voluntarily waived his right to remain silent and his right to have counsel present during questioning. See North Carolina v. Butler, 441 U.S. 369, 373 (1979). In this case, Mr. Jones was intoxicated, and law enforcement could plainly observe that. Thus, any waiver of his right to remain silent or to have attorney cannot be deemed knowing, intelligent, or voluntary. As the Supreme Court has recognized:

> Surely in the present stage of our civilization a most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane; and this judgment can without difficulty be articulated in terms of the unreliability of the confession, the lack of rational choice of the accused, or simply a strong conviction that our system of law

enforcement should not operate so as to take advantage of a person in this fashion. Blackburn, 361 U.S. at 207.

While it is true that the statements of an intoxicated individual are not per se "involuntary" absent some element of police overreaching, officers clearly took advantage of Mr. Jones' mental state in the present case  As the government cannot meet its burden of proving a valid waiver of the Mr. Jones' Miranda rights, any and all statements made after any Miranda warnings were given must also be suppressed.

Additionally, Mr. Jones's statements cannot be used at trial unless the government can show that the statements were a product of his rational intellect and free will.  Mincey v. Arizona, 437 U.S. 385, 398 (1978).  The government bears the burden of proving the voluntariness of the statements by a preponderance of the evidence.  See Lego v. Twomey, 404 U.S. 477, 489 (1972).  To decide voluntariness, the Court must look at the totality of the circumstances to determine whether the defendant's free will had been overcome.  Beasley v. United States, 512 A.2d 1007, 1016 (D.C. 1986).

In this case, the government will not be able to meet its burden because the circumstances in this case indicate that the Mr. Jones's statement was made involuntarily.  Consequently, the statement should be suppressed for all purposes, including impeachment, and should be held inadmissible.

## CONCLUSION

Because the tangible evidence and statements were obtained as the result of an unlawful seizure and search in violation of the Fourth Amendment, and because the statements were obtained in violation of the Fifth and Sixth Amendments, all tangible evidence seized and statements obtained must be suppressed.

WHEREFORE, for the aforementioned reasons and for any other reasons which may appear to the Court at an evidentiary hearing on this Motion, Mr. Jones respectfully requests that the Court grant this Motion.

                                                  Respectfully Submitted,

                                                  A.J. Kramer
                                                  Federal Public Defender

                                                       /s/
                                                 _____

                                                 Tony Axam
                                                 Assistant Federal Public Defender
                                                 625 Indiana Avenue, N.W., Ste. 550
                                                 Washington, D.C.  20004
                                                 (202) 208-7500