## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.  05-373 (PLF) |
| v. | Judge Paul L. Friedman |
| ERIC RAY JONES,<br>　　　　　　　Defendant. | Hearing Date: December 12, 2005 |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this opposition to defendant's Motion to Suppress Tangible Evidence and Statements.  The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

## I.     FACTS

The defendant has been charged in a five-count indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), Unlawful Possession of Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922 (g)(1), Unlawful Possession with Intent to Distribute Cannabis, in violation of  21 U.S.C. §§ 841(a) and 841(b)(1)(D), Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1), and Threatening to Injure, or Physically Damage, in violation of 22 U.S.C. § 407.

On May 13, 2005, at approximately 1:45 p.m., Metropolitan Police Department officers responded to a radio dispatch which advised that there was a man with a gun sitting in a blue mini-van parked in front of 2220 Bryan Place, Southeast, Washington, D.C.  Upon arriving at that

location, the uniformed officers saw a young man, who later identified himself as "R.D.",[1] sitting in the front passenger seat of an idling, light-blue Dodge mini-van.  Officers knocked on the front passenger's window of the vehicle.  Without a word being spoken by anyone, R.D. opened the passenger's door.  Immediately, the officers were overwhelmed by the strong odor of marijuana emanating from the mini-van.  When R.D. was asked who was driving the car, he responded that his brother "E" had been driving, but that "E" had just walked down the street.  The officers asked the young man to exit the vehicle.  As the officers continued talking with him, R.D. appeared excited and very nervous.  One of the officers looked into the mini-van and opened an unlocked drawer under the front passenger's seat.  There, the officer located an unloaded Bryco 9 mm semi-automatic handgun.  The police then began a search of the vehicle.

During the search, officers found a back pack on the floorboard behind the driver's seat that contained 1) two ziplock bags with over 300 grams of a green weed substance,[2] 2) a Ruger 9 mm semi-automatic handgun that was loaded with three rounds of 9 mm ammunition, 3) three magazines, one of which was loaded with eight rounds of 45 caliber ammunition, and 4) a gun case containing two additional magazines.  The police also found defendant's driver's license, an Enterprise car rental agreement, $640, and a suitcase containing 25 rounds of AK47 ammunition.  Officers called the Enterprise car rental office listed on the rental agreement and learned that defendant had rented the mini-van on May 9, 2005.  The officers then located defendant at 2220 Bryan Place, Southeast, in apartment 101.  After being arrest, defendant spontaneously stated, "I

---

[1]    As the young man was later determined to be a juvenile, the government will refer to him by his initials, "R.D."

[2]    A portion of the green weed substance was subjected to a field test, and the field test indicated the presence of THC in that substance.

know whose guns those are. JJ pulled the trigger and shot me in my back." While being transported to the police station, defendant also said, "A forty-five is what I used to shoot back at those dudes right out front of where I live at." At the police station, defendant waived his <u>Miranda</u> rights and admitted that the guns and the drugs were his.

## II.    ARGUMENT

Defendant is now moving to suppress the evidence seized from his rented van and his subsequent statements to the police. As an initial matter, defendant claims that the police had no search warrant and no probable cause to search the van. Defendant also contends that his subsequent arrest was unlawful. Finally, he claims that the statements he made to police should be suppressed because his waiver of rights was not voluntary. These arguments should be rejected. First, the officers did have probable cause to search the van. After having a consensual contact with the juvenile, the juvenile opened the door and the smell of marijuana wafted from the car, providing the officers with probable cause to believe marijuana was in the vehicle and thus, the right to search the mini-van for marijuana. Second, with regard to defendant's arrest, the officers had probable cause to seize defendant based on their finding the marijuana, the guns and the ammunition in the mini-van that defendant had rented coupled with their recovery of his identification and other papers connecting him in the van. Finally, with respect to defendant's statements, some of the statements were made spontaneously, and thus are not subject to the dictates of <u>Miranda</u>. Additionally, his admission that he owned the guns, ammunition and drugs was made only after he had provided a knowing, intelligent and voluntary waiver of his <u>Miranda</u> rights.

3

**A.    The police officers had probable cause to search the mini-van.**

The officers had probable cause to search the mini-van because, after a consensual encounter with the juvenile, they smelled marijuana, giving them reason to conclude that marijuana was in the car.  For this reason, defendant's motion to suppress the tangible evidence should be denied.

As the Supreme Court stated in <u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991), "a seizure does not occur simply because a police officer approaches an individual and asks a few questions."  Indeed, the encounter is no more than a consensual contact as "long as a reasonable person would feel free to disregard the police and go about his business."  <u>California v. Hodari D.</u>, 492 U.S. 621, 628 (1991).  For a consensual encounter, law enforcement officers do not even need a reasonable suspicion.  <u>Bostick</u>, 501 U.S. at 434.  "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  <u>Id.</u> (internal quotations omitted).  To determine when police conduct crosses from a consensual encounter to a seizure, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."  <u>Id</u>. at 437.  In doing this analysis, courts look at such factors as the time of day, the place, the numbers of officers present, whether they were uniformed, whether any commands were given, what tone of voice was used in giving the commands, whether the individual was touched, whether the individual was threatened or physically intimidated, and whether the officers' blocked the individual's path.  <u>U.S. v. Jones</u>, 374 F. Supp. 2d 143, 148 (D.D.C. 2005).

In the instant case, the officers' initial encounter with the juvenile was consensual.  Indeed, in the early afternoon at 1:45 p.m., three uniformed officers approached a van that idling in the street.

Without anyone saying a word, one officer knocked on the front passenger window, next to where the juvenile was sitting. The juvenile responded by opening the door. At that point, the officers smelled marijuana. Because the officers had not said anything, much less touched, threatened or physically intimidated the juvenile, their very brief initial contact clearly was consensual.

Upon the juvenile opening the car door and the officers smelling the distinct odor of marijuana, they had probable cause to search the vehicle. In United States v. Ross, 456 U.S. 798, 825 (1982), the Supreme Court held that where officers have probable cause to believe that a vehicle contains contraband, they may search it as thoroughly as if a magistrate had authorized the search by warrant. Further, the officers may search "every part of the vehicle and its contents that my conceal the object of the search." Id.

Several courts have upheld searches of the entire vehicle upon the establishment of probable cause that marijuana may be found inside of it. See, e.g. United States v. Turner, 119 F.3d 18, 20 (D.C. Cir. 1997) (smell of burnt marijuana emanating from car, along with pieces of torn cigar paper and zip of green weed, supported search of vehicle, including trunk); see also United States v. Zabalza, 346 F.3d 1255, 1259 (10th Cir. 2003) (smell of marijuana supported search of vehicle, including trunk); United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000) (smell of marijuana supported search of vehicle); United States v. Taylor, 162 F.3d 12, 21 (1st Cir. 1998) (smell of marijuana supported search of vehicle); United States v. Reed, 882 F.2d 147, 149 (5th Cir. 1989)(smell of marijuana "in itself" supported search of vehicle).

In this case, the smell of marijuana provided the officers with probable cause to search the van and closed containers in the van in which contraband might be secreted. Accordingly, the officers opened the unlocked drawer that was under the front passenger seat where the juvenile had

been sitting.  There, they found a gun.  They continued searching and found the backpack on the floor behind the driver's seat which contained the packaged marijuana the officers had smelled along with an additional gun, ammunition, magazines and a gun case.  They also found defendant's identification, his rental agreement with Enterprise rental car and more ammunition. Because the search was lawful, the evidence recovered should not be suppressed.

**B.  Defendant was lawfully arrested.**

The Fourth Amendment permits police to make warrantless arrests based upon probable cause for felonies committed in their presence.  United States v. Watson, 423 U.S. 411, 417-418 (1976).  Probable cause to arrest is viewed from the perspective of the police officer and it is a decision that is reviewed based upon the totality of the circumstances confronting the officer at the time of the events leading up to the arrest.  Illinois v. Gates, 462 U.S. 213, 230-32 (1983).  Probable cause exists where the arresting officer possesses information "sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense."  Beck v. Ohio, 379 U.S. 89, 91, (1964); see also United States v. Green, 670 F.2d 1148, 1152 (D.C.Cir.1981).  In this case, the officers had probable cause to arrest defendant in light of the over 300 grams of marijuana and the arsenal of guns and ammunition they found in defendant's vehicle.

**C.  Defendant's statements are admissible.**

Defendant also seeks to have his statements suppressed on the grounds that defendant was too intoxicated to knowingly, intelligently and voluntarily waive his Miranda rights.  This argument fails for several reasons.  First, defendant's initial statements were made spontaneously and thus are not subject to the dictates of Miranda.  Second, defendant's videotaped admissions were made after a valid Miranda waiver as the evidence at the motion hearing will show.

**1. Defendant's initial statements were spontaneous.**

The scriptures of <u>Miranda</u> are implicated only when two circumstances are both present: the defendant is in custody, and he is being interrogated. <u>Miranda v. United States</u>, 384 U.S. 436 (1966). If a suspect is in custody, but volunteers a statement in the absence of interrogation, there is no <u>Miranda</u> issue even if the suspect was not given any advice of rights. <u>Miranda</u>, 384 U.S. at 478; <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980). Interrogation not only includes direct questioning, but "any words or actions on the part of the police... that the police should know are reasonably likely to elicit an incriminating response." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980).

As defendant was being placed under arrest, defendant stated, "I know whose guns they are. JJ pulled the trigger and shot me in my back." Since defendant was being arrested, the government concedes that defendant was in custody. However, as the evidence will show, defendant made the statement spontaneously, without prompting by anyone. Further, as defendant was being transported to the police station, defendant once again spoke spontaneously and without prompting when he said, "A forty-five is what I used to shoot back at those dudes right out front of where I live at." Accordingly, these statements are admissible.

**2. Defendant's videotaped statements are also admissible.**

Once defendant arrived at the police station, he provided the police with a videotaped statement, in which after waiving his <u>Miranda</u> rights, he admitted ownership of the guns and marijuana. Defendant is seeking to suppress these statements, claiming his waiver was not knowing, intelligent and voluntary because defendant was allegedly intoxicated.

A defendant's confession can be used against him as evidence, if the government proves by a preponderance of the evidence, <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1987), that he waived

his rights "voluntarily, knowingly and intelligently," <u>Miranda</u>, 384 U.S. at 444. A defendant's waiver of <u>Miranda</u> rights involves two separate questions. The government must also establish by preponderance of the evidence that the statement defendant made was voluntarily made. <u>See</u> <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972). To determine whether a statement was voluntarily made, this Court must examine the totality of the circumstances to determine whether the defendant's "will has been overborne and his capacity for self-determination critically impaired." <u>See</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225 (1973); <u>Connelly</u>, 479 U.S. at 167 (1986). In making this determination,

> a district court must examine 'the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation.' <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047, 36 L. Ed.2d 854 (1973). Relevant factors include: the youth of the accused; his lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.

<u>United States v. Rodney</u>, 956 F.2d 295, 297 (D.C. Cir. 1992).

The second step of the analysis focuses on whether the waiver was "knowing and intelligent," or in other words "whether it was made with the full awareness of both the nature of the right being abandoned and the consequence of the decision to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). This step focuses on the particular facts, background, experience and conduct of the accused. <u>North Carolina v. Butler</u>, 441 U.S. 369, 374 (1979). "Only if the totality of circumstances surrounding the interrogation reveal uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived." <u>Moran</u> at 475 U.S. at 421.

The government expects that, if a hearing is held on this matter, the totality of circumstances would demonstrate that defendant's waiver was voluntarily, knowingly and intelligently made. First,

defendant's will was not overborne.  The defendant identifies no coercive police activity, and the circumstances of defendant's statement do not suggest that it was the product of coercive police activity, or was in any other way involuntary.  Second, despite defendant's claim of intoxication, the evidence presented at the motion hearing will show, defendant was not so clearly impaired, if he was impaired at all, that he did not understand the right he was abandoning and the consequence of doing so.[3]

---

[3]     Defendant is also charged with threats based on an May 17, 2005 incident during which defendant approached Officer Joshua Branson, one of the officers who had participated in his arrest on May 13, 2005, and demanded the return of his mini-van and his identification.  When Officer Branson, who was off duty, refused to speak with defendant, defendant responded, "Fuck that, I'll see you on the street."  When Officer Branson asked what defendant meant, defendant stated, "Fuck your white ass!"  Defendant also gestured as if he was firing a gun with his right hand. Defendant apparently concedes the admissibility of these statements. But in any case, the statements would be admissible because defendant was not in police custody nor was he being interrogated at the time he made the statements.

WHEREFORE, the United States respectfully submits that defendant's motion to suppress evidence and statements should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
Bar No. 451058

_____

Denise M. Clark
Assistant United States Attorney
Major Crimes Section, D.C.  Bar No. 479149
555 4th Street, N.W.  #4840
Washington, DC 20004
(202)353-8213; Fax: 353-9414

_____ CERTIFICATE OF SERVICE _____

I HEREBY CERTIFY that I caused a copy of the foregoing to be served on the attorney for the defendant, Tony Axam, this _____ day of November, 2005.

_____

Denise M. Clark
Assistant United States Attorney

10